UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **APRIL LA REE EPPS,**<br>    Plaintiff,<br><br>v.<br><br>**KILOLO KIJIKAZI,**<br>**Acting Commissioner**<br>**of the Social Security**<br>**Administration,**<br>    Defendant. | Case No. 4:20-cv-1340-CLM |

## MEMORANDUM OPINION

April La Ree Epps seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Epps' application in an opinion written by an Administrative Law Judge ("ALJ"). The SSA's Appeals Council then granted Epps' request for review but denied her claim on the merits. Epps argues: (1) that the ALJ erred in evaluating opinion evidence from her treating physician, Dr. Larry Scarborough, and (2) that the Commissioner's decision isn't supported by substantial evidence. As detailed below, the ALJ applied the correct legal standards and substantial evidence supports the Commissioner's decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.  STATEMENT OF THE CASE

  A.  Epps' Disability, as told to the ALJ

Epps was 35 on her alleged disability onset date. (R. 262). Epps graduated high school and completed one year of college. (R. 289). Epps has some work experience in housekeeping and sales but nothing that qualifies as past relevant work. (R. 147–50).

In her disability report, Epps alleged that she cannot work because she suffers from anxiety, panic disorder, OCD, nonessential tremors, migraines, degenerative disc disease in neck, crooked spine, and limited use of arms. (R. 288). At the ALJ hearing, Epps testified that her biggest problems are constant head pain, ringing in the ears, dizziness, and swelling all over. (R. 123). According to Epps, for 15 days out of a 30-day period these symptoms cause pain that she'd rate as a 10/10 on the pain scale. (R. 125). Epps' next most severe symptom is neck pain that she's had since she was in a car accident at 14. (R. 126). Epps also has joint pain from swelling and cysts behind her knees. (R. 131).

Epps says that she cannot lift much more than a backpack that weighs around 5 pounds. (R. 127). And Epps doesn't lift her two-year-old. (*Id.*). Epps' cysts make it hard for her to bend her knees. (R. 133–34). Epps also can: (1) walk only 20 or 30 steps at a time; (2) stand for 10 to 15 minutes; and (3) sit for around 30 minutes. (R. 138–39).

Epps has had anxiety and panic attacks for over 10 years. (R. 136). And she says that she has panic attacks several times a week, which can last for several hours. (*Id.*). Epps also suffers from symptoms of depression, such as sadness, hopelessness, and frustration. (R. 137).

Epps lives in an apartment with her boyfriend and five children. (R. 120). According to Epps, she changes her clothes only once a week. (R. 139). And Epps' boyfriend does most of the cooking. (*Id.*). But Epps washes the dishes once a day and does laundry with help from her boyfriend. (R. 139–40). During the day, Epps' boyfriend is at work, her older two children are at school, and her two and four-year-old are at home with Epps. (R. 140). On a typical day, Epps keeps her youngest two children in the living room and kitchen area and has them watch cartoons. (*Id.*).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

2

| \ | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

## C. Epps' Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Epps applied for disability insurance benefits, a period of disability, and SSI in June 2017, claiming that she could not work because of various ailments, including anxiety, panic disorder, OCD, nonessential tremors, migraines, degenerative disc disease in neck, crooked spine, and limited use of arms (R. 288). After receiving an initial denial in September 2017, Epps requested a hearing, which the ALJ conducted in April 2019. The ALJ ultimately issued an opinion denying Epps' claims in May 2019.

At Step 1, the ALJ determined that Epps was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined that Epps suffered from the following severe impairments: moderate Baker's cyst right knee with mild degenerative changes, anxiety, and depression.

At Step 3, the ALJ found that none of Epps' impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Epps' residual functional capacity.

The ALJ determined that Epps had the residual functional capacity to perform medium work with these added limitations:

- Epps cannot operate foot controls.

- Epps can only occasionally climb stairs.

- Epps can never climb ladders, ropes, or scaffolds.

- Epps cannot kneel, crouch, or crawl.

- Epps should avoid all exposure to extreme heat and excessive vibration.

- Epps should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, fully ventilated areas, etc.

- Epps should avoid unprotected heights and hazardous machinery.

- Epps is limited to unskilled work with the ability to attend and concentrate for 2-hour periods.

- Epps is limited to occasional workplace changes.

- Epps can make simple work-related decisions.

- Epps should have no more than occasional interaction with the general public.

- Epps should have occasional interaction with coworkers.

At Step 4, the ALJ found that Epps has no past relevant work. At Step 5, the ALJ determined that Epps could perform jobs that exist in significant numbers in the national economy and thus Epps was not disabled under the Social Security Act.

Epps requested an Appeals Council review of the ALJ's decision. (R. 1–18). The Appeals Council granted Epps' request for review and issued an unfavorable decision, finding that Epps was not disabled because she could work as a packer/packager, assembler, and order puller. (R. 5–6).

## II.  STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III.   LEGAL ANALYSIS

Epps makes two arguments for why the SSA erred in finding her not disabled. First, Epps asserts that the ALJ erred because she didn't defer to the opinion of Epps' treating physician, Dr. Larry Scarborough. Second, Epps contends that the Commissioner's decision to deny benefits isn't supported by substantial evidence because the vocational expert's testimony was deficient. The court will address each argument in turn.

#### A.   Dr. Scarborough's Opinion Evidence

Epps first asserts that the ALJ had to afford the opinions of her treating physician, Dr. Scarborough, substantial or considerable weight absent good cause to disregard his opinions. That's the rule that applies to claims filed before March 27, 2017. But Epps filed for disability benefits and SSI in June 2017. And under the regulations that apply to claims filed on or after March 27, 2017, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 C.F.R. § 404.1520c(a).

1. <u>Applicable legal framework</u>: Epps concedes that the new regulations no longer require an ALJ to defer to a treating physician's opinion. But she argues that these new regulations didn't abolish Eleventh Circuit precedent on the treating physician rule. The Eleventh Circuit has recently rejected this argument. *See Harner v. Soc. Sec. Admin, Comm'r*, --- F.4th ---, 2022 WL 2298528 (11th Cir. June 27, 2022). As the Eleventh Circuit explained, the SSA's new regulations validly abrogated the treating-physician rule, so ALJs no longer need to defer to the medical opinions of treating physicians. *See id.* at *1.

Under the new regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how he considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions will be." 20 C.F.R. § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

2. <u>Dr. Scarborough's opinion</u>: Dr. Scarborough is Epps' physician at Quality of Life Health Services. In March 2018, Dr. Scarborough filled out a physical capacities form on Epps' behalf. (R. 1393). This form required Dr. Scarborough to check boxes and write short answers to several disability related questions. (*Id.*).

According to Dr. Scarborough, Epps can sit upright in a standard chair for less than 30 minutes at a time. (*Id.*). And Epps can stand for less than 15 minutes at a time. (*Id.*). Plus, in an 8-hour daytime period, Dr. Scarborough would expect Epps to be lying down, sleeping, or sitting with legs propped at waist level or above for 5 out of the 8 hours. (*Id.*). Dr. Scarborough also stated that he expected Epps to: (1) be off-task 79% of the time during an 8-hour day, and (2) miss around 15 days of work in a 30-day period. (*Id.*). Dr. Scarborough noted that headaches, cervicalgia, myalgia, and edema caused Epps' limitations. (*Id.*). Finally, Dr. Scarborough reported that drowsiness was a side effect of Epps' medications. (*Id.*).

The ALJ found Dr. Scarborough's opinion "not persuasive." (R. 92). The ALJ noted that Dr. Scarborough didn't support his opinion and that Epps hadn't sought treatment for drowsiness as an adverse medication side effect. (*Id.*). The ALJ also explained that examinations hadn't shown

edema, revealed that Epps had normal attention span and concentration, and reflected that Epps wasn't in acute distress. (*Id.*).

The ALJ's analysis shows that she applied the correct legal standard by evaluating the persuasiveness of Dr. Scarborough's opinion based on the factors of supportability and consistency. And substantial evidence supports the ALJ's finding that Dr. Scarborough's opinion wasn't persuasive. As for supportability, the ALJ correctly noted that Dr. Scarborough didn't support his opinion through explanations or objective medical evidence. (*Id.*). The ALJ also explained that Dr. Scarborough's opinion contradicted much of the objective evidence. (*Id.*). For example, though Dr. Scarborough reported that Epps' medications caused drowsiness, Epps' treatment notes don't list drowsiness as a medication side effect. (R. 832–45, 1018–49). Epps' treatment notes also contradict Dr. Scarborough's statement that edema caused Epps to have the disabling limitations that Dr. Scarborough identified. (R. 838, 844, 1022, 1028, 1039, 1047, 1269). Finally, though Dr. Scarborough suggested that Epps would have trouble staying on task due to pain, Epps' examinations routinely showed that she was in no acute distress and retained normal attention span and concentration. (R. 1113–14, 573, 579, 1140, 1172, 1222, 1372–73). Based on these records, it was reasonable for the ALJ to conclude that Dr. Scarborough's opinion wasn't persuasive.

Epps' argument that the ALJ erred focuses on her treating relationship with Dr. Scarborough. But a medical source's relationship with a claimant is only one of several factors that ALJs consider when evaluating a medical opinion. *See* 20 C.F.R. § 404.1520c(c)(3). And unlike the supportability and consistency factors, the ALJ needn't explain how she considered the relationship factor. *See* 20 C.F.R. § 404.1520c(b)(2). Plus, though Epps asserts that clinical and laboratory findings from Quality of Life support Dr. Scarborough's opinion, it's not this court's job to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]*.*" *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2021). Indeed, "[e]ven if the evidence preponderates against the Commissioner's findings, [this court] must

affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158–59. Having reviewed the ALJ's hearing decision and the record, the court determines that the ALJ adequately explained why she found Dr. Scarborough's opinion not persuasive and that substantial evidence supports that finding. So the ALJ didn't err in evaluating Dr. Scarborough's opinion evidence.

### B.     Vocational Expert's Testimony

Epps next argues that the decision to deny benefits lacks the support of substantial evidence because the Commissioner relied on a vocational expert's answer to a hypothetical question that didn't accurately state her pain level or residual functional capacity.[1]

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180. But if substantial evidence supports the finding that the claimant doesn't have a particular limitation, the ALJ needn't include that limitation in his hypothetical question. *See Crawford*, 363 F.3d at 1161.

Though Epps cites the standard of review for vocational expert testimony, her briefs don't explain why the hypothetical question the Commissioner relied on is deficient. Instead, Epps simply states, "[t]he VE testimony is not sufficient evidence because the hypothetical question relied upon by the ALJ in denying benefits did not fully state claimant's impairments and limitations." (Doc. 14 at 27). Epps then notes that when the vocational expert was asked an alternative hypothetical—*i.e.*, one that the Commissioner didn't rely on—the vocational expert testified that a person with those limitations couldn't find work in the national economy.

"[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this court from] considering the issue on appeal." *Singh v. U.S. Atty. Gen.*, 561

---

[1] Epps also asserts that the hypothetical question was deficient because the ALJ rejected Dr. Scarborough's opinion evidence. As explained above, the court rejects this argument.

F.3d 1275, 1278–79 (11th Cir. 2009). So Epps' failure to explain what additional limitations the ALJ needed to include in the hypothetical question means she has abandoned this argument.

In any event, having reviewed the evidence, the court finds that the Commissioner didn't err in relying on the vocational expert's testimony. As the Appeals Council noted, the vocational expert testified that a hypothetical person with Epps' residual functional capacity could work as a packer and packager, assembler, or order puller. And substantial evidence supports the Commissioner's residual functional capacity finding. In fashioning Epps' residual functional capacity, the ALJ considered her mental impairments, noting that Epps' mental status exams hadn't shown psychiatric abnormalities. (R. 92). Instead, Epps had a cooperative behavior, normal mood and affect, normal attention span and concentration, normal judgment, and normal thought. (R. 573, 579, 754, 784, 955, 997–98, 1114, 1140, 1172, 1222, 1372–73).

The ALJ also considered Epps' physical impairments, including her nonsevere impairment of migraine headaches. (R. 88–93). As the ALJ explained, Epps' physical examinations often showed normal gait, normal station, only mild degenerative changes, and no acute neurological abnormalities. (R. 92–93, 564, 573, 579, 583, 651, 677, 688, 693, 733, 754, 764, 773, 776, 800, 803, 810, 813, 819, 838, 844, 955, 984, 997, 1009, 1022, 1028, 1047, 1114, 1140, 1172, 1222, 1239, 1241, 1269, 1319, 1373). A reasonable person could review this evidence and agree with the limitations that the ALJ gave Epps. So substantial evidence supports the Commissioner's residual functional capacity assessment, and the Commissioner didn't err in relying on the vocational expert's testimony to deny benefits.

## IV. CONCLUSION

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the Commissioner's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on July 20, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE